Day, J.
The plaintiff in error was indicted and tried for the murder of George "Warters, in the court of common pleas for the county of Hamilton, at the January term, 1863. He was convicted of murder in the first degree, and sentenced to be executed. Exceptions were taken to various rulings of the court during the progress of the trial, to the charge to the jury, and to the overruling motions for a new trial and in arrest of judgment. On the allowance of a writ of error by this court, twenty assignments of error are entered upon the record.
The error alleged in the first and fourth assignments is the same in principle, and, in each case, is based on the overruling a challenge of a juror for cause; and, in the second and third assignments, the error claimed, is the overruling certain questions propounded to such jurors on their voir dire.
It is unnecessary to state further, or consider the questions made and discussed under these assignments; for the record *show6, that each of these jurors was peremptorily challenged by the prisoner, and was set asido by the court; and that he so challenged but seventeen jurors called, and manifested no desire to exercise his right to the remaining six of the twenty-three peremptory challenges secured to him by the statute.
If it be conceded that the ruling complained of was erroneous, still, the prisoner was not prejudged thereby; for the jurors challenged did not sit upon the jury that convicted him; nor was he-prejudiced in the exercise of his peremptory challenges; for, after having exercised such challenge in these two instances, he had more remaining which he declined to use. Had these jurors been excused for cause, the only difference with the prisoner would have been that he would have been content, and waived all objections to the jury sworn, with eight instead of six peremptory challenges that he had no occasion to use. He was none the less tried to an impartial jury, as to whom, by declining to further exercise his right of peremptory challenge, he waived all objection; also all exceptions- *210 •to the ruling of the court, relating only to the qualifications of persons not sworn as jurors or in any way acting in the case.
The fifth and sixth assignments of error relate to the same matter ; the former excepts to the overruling of an objection by the prisoner to a question propounded to a witness; and the latter, to the overruling a motion by him to withdraw the answer to the •question from the jury.
The question and answer are as follows: “.State what threat, if any, you hoard the defendant make, shortly before the death of George W. Wartors, in reference to the property of John B. Whaley, one of the proprietors of the house on Baker street, where Warters was killed?” Answer: “ About three weeks before Warters’ death, Tom Mimms was grumbling about the hard times, and I asked him why he did not go down to Whaley’s and get work. He said that Whaley had ordered that he should not come to the house, that he (Mimms) was too sharp; and then he said if he had •a chance he ’d knock Whaley on the head and take every cent he had.”
The counsel for the plaintiff in error seem to regard this as an effort to prove threats of the prisoner to commit an offense other *than that for which he was on trial. The testimony was updoubtodly inadmissible for that purpose. It is, however, to be ■observed, that the question does not call for threats against the person of Whaley, but for threats in reference to his property alone. The record shows that the court excluded from the consideration of the jury all the answer that related to threats against the person of Whaley, and permitted so much only of the answer as related to throats against the property of Whaley tó be regarded as evidence. Was this admissible? Clearly not, as an independent fact; but other evidence given on the trial tended to prove that Wartors, the man claimed to have been murdered, had money; that it was taken from him; that Whaley was a proprietor of the gambling-house on Baker street where Warters was killed; that the deceased was a ■dealer of faro, and employe of Whaley, having sums of money in his possession belonging to him; and that the prisoner had knowledge ■of these facts. In connection with this proof, the evidence in ques • tion was admissible as a circumstance for the jury to consider what, if any, connection it had with the money taken from the deceased, :and, if any, what weight it might be entitled to in deciding the issue submitted to their determination.
*211 The seventh error complained of is: “ The instructing of Thomas Averitt, after he had been sworn as a witness in the case on the part ■of the state, ‘that he need not answer any question if, in his judgment, the answer would criminate him.’ ”
Averitt was indicted with the plaintiff in error, as as aider and abettor of the same crime. The trial proceeded against Mimms alone, and Averitt was called as a witness by the state. Upon the suggestion of the prosecuting attorney, after he was sworn, and at the request of the witness, thereupon made, to be instructed as to his rights, the court informed him, “ that he need not answer any question if, in his judgment, the answer would criminate him; but that if hé once began to answer on any subject, he must disclose all he' knew on that point.” To all of which the defendant excepted.
The witness was then examined and cross-examined at length, without availing himself of his right as explained to him by the court.
*It is claimed, on behalf of the plaintiff in error, that, after the witness was sworn, it was too late for him to ask, or for the court to grant, the privilege claimed.
The point made is technical, only, at most; and is unimportant, since the witness waived the privilege conceded to him by the court. He could not have testified, or “ disclosed the whole transaction,” more fully than he did, if the court had refused the instructions given ; the prisoner was not, therefore, prejudiced thereby.
The eighth error claimed is: “ The admitting the testimony of Henrietta Griggs, as to the conversation between her husband, William Griggs, and the defendant, and in refusing to rule out the same.”
It is insisted, first, that it does not appear that the conversation related to the crime charged in the indictment.
The witness stated that in the conversation the prisoner told her husband that there was a Kentucky sportsman in town, and proposed to give him (Griggs) a thousand dollars if he would hold him; as he passed in the alley, while the prisoner and another killed him and took his money. There was other testimony tending to show that the deceased was a Kentuckian, and a sporting man. The court, therefore, properly overruled the objection on this point, and permitted the testimony to go to the jury; and left it to be determined by them whether, upon all the proof, the conversation related to the deceased.
*212 It is, also, further claimed that the testimony of this witness was-inadmissible, for the reason that it was not the best evidence. It is-insisted that the husband, who was a party to the conversation, should have been called.
There was nothing relating to the principles of primary and secondary evidence involved in the testimony offered. What was said in the conversation was the matter to be proved, and any one who-heard it was competent to relate it. If one had superior means of hearing and knowing what was said than the other, that one may be entitled to the most credit, but the other is none the less competent to tell what she heard.
The ninth error assigned is the admission of certain testimony objected to by the defendant. But the record shows *that all this evidence was on his motion, ruled out, and the jury were instructed that it-must be “ wholly disregarded.”
The tenth and eleventh errors alleged are the admission of, and' refusal to rule out, “ the testimony of Major Ross, in so far as the same proved or tended to prove the conduct and declarations of Winston H. Brown about the time when and near the place where-the watches produced on the trial were said to be found.”
Brown was indicted in the same indictment with the prisoner on-trial. And it is claimed that the testimony of Ross was inadmissible, because it did not tend to prove the conduct and declarations-of a conspirator pending the conspiracy, and in prosecution of a common design, but to prove what was said and done afterward. The effort, if any, to prove a conspiracy, was but slight; and the evidence does not seem to have been admitted on that ground.
The evidence tended to prove that certain moneys and watches were in the possession of the deceased; that, after the murder, part of the money was found in the possession of the prisoner; that the watches produced on the trial belonged to the deceased; that, after the murder, the prisoner was at Brown’s and in communication with him. The watches were found concealed under Brown’s-barn; and his conduct and declarations led to the discovery. Now, if it be conceded that his conduct and declarations, at the time and' place of the discovery of the watches, were not admissible as the declarations and conduct of a conspirator, still, as a part of the transaction of the discovery, tending to show that, though concealed, the-watches were in fact in the possession or custody of Brown, they were admissible; leaving it for the jury to determine whether hes *213 was such custodian; and, if so, whether, under the proof, he had been made so by the prisoner, with or without reference to any conspiracy between them.
The twelfth, thirteenth and fourteenth assignments of error relate to the admission of, and refusal to rule out, the testimony of Matilda G-reen, offered by the prosecution to rebut the evidence of Dave Mimms, given in defense. The witness was asked what she had heard Dave Mimms, during a specified period, say “ about Tom being an idle or trifling fellow? ”
*It is claimed that “ whatever Dave Mimms, within the time specified, may have stated about Tom being an idle or trifling fellow,” was immaterial to the issue; and therefore was not the subject of contradiction for the purpose of impeaching his credibility, for which alone it could be competent.
It, however, became material for the defense to explain the prisoner’s possession of money shortly after the murder, shown by the prosecution. For this purpose, Dave Mimms, a witness for the «defense, had testified in chief that Tom, the prisoner, was never without money, and that shortly before the murder he had two or •three hundred dollars. On cross-examination, he denied that he bad stated that Tom was a worthless or trifling fellow, or that he had to support him. In reply to the question propounded to Matilda Green in rebuttal, she stated that she had never heard Dave Mimms say that Tom was a trifling fellow; so that, as to that, nothing was elicited to the prejudice of the witness or the prisoner. But she further stated that, shortly after the prisoner’s arrest, he did say, “I have given Thomas money since he came home, at ■different times, as much as fifty dollars—money to pay his little ■expenses around—to pay for his washing. I gave him three dollars ¡a little more than a week ago to pay for his washing.” This statement was not in harmony with and tended to rebut his testimony; and, as his testimony was material to the defense, that offered by the other party was material, and therefore admissible, to determine the credibility of the witness.
The fifteenth error assigned is the admission of testimony that was, on motion of the defendant, withdrawn by the court from the consideration of the jury.
The sixteenth assignment of error is based upon the charge of the court to the jury, in “ the recital in the charge, of the evidence *214 in the ease, claimed, as the court understood it, by the counsel for the state and the counsel for the defendant.”
It does not appear from the record that this was done in any manner tending to prejudice the defendant; nor are such recitals of the respective claims of the parties improper, when fairly made for the purpose only of making a proper application of the law arising in the case, and the jury are left as the unbiased triers of the issues of fact in the case.
*The seventeenth assignment alleges that the court erred in “ submitting to the jury the forms of a verdict to be rendered in the case.”
It is shown by the record that, after the court had fully charged-the jury upon the law of the case, the court instructed them upon the form of the verdict they should render, in accordance with the-facts they might find upon each count of the indictment on which the defendant was tried.
The defendant was tried upon the first, third, and fifth counts of the indictment. The court, in the presence o^ the counsel of both-parties, and without objection (as expressly shown by the record), passed to the jury four written forms of a verdict, in accordance with such instructions. One of the written forms was a general verdict of not guilty; each of the others was the form of a verdict of guilty, proper to be rendered under each of the counts upon which the defendant was tried, if found guilty by the jury. In' each of these forms, the grade of the crime—-whether manslaughter' or murder in the first or second degree—was left blank, to be filled as the jury might find, under the instructions of the court.
It is not claimed that there was anything improper or erroneous in the written forms of a verdict so given to the jury; or that the-court, in any manner, misdirected the jury in relation to the form, of their verdict, whether written or oral. The objection is, not that the court improperly instructed the jury as to the form of their verdict, but that such proper form of a verdict was given to-them in writing. The objection, then, goes only to the mode or manner of giving proper instructions to the jury. We do not see how the defendant could be prejudiced by the mode adopted by the court in the discharge, in this instance, of the legal duty of-giving to the jury the several forms of a verdict proper to be rendered, as they might find the fact to be. It was the same thing to *215 the defendant whether these forms were left with the jury orally or in writing.
The eighteenth assignment of error—that “ the verdict is not sustained by the testimony ”—can not be sustained, for the reason that the record docs not show that we have before us all the evidence given on the trial.
The nineteenth assignment of error is, “the overruling the ^motion for new trial.” The causes assigned as grounds for a new trial, so far as specifically alleged, are the same as the assignments of error hereinbefore considered. We have, therefore, already substantially held that there was no error in overruling that motion.
This disposes of all the errors specifically assigned upon this record. There is, however, a general assignment of “ other errors in the record,” as the twentieth assignment of error.
The counsel for the plaintiff in error claim in argument, under the general assignment of errors, that there are sundry errors in the charge of the court to the jury not specifically assigned for error upon the record.
We have carefully considered the errorsdhus alleged and urged; and although in some instances the legal principles arising in the case are not stated in the most accurate form, and in others are pressed to the utmost verge of the law, still, we think that, so far as material, and applied to the facts of this case, there was no error in the charge of the court to the jury,
The charge is lengthy, embracing forty printed pages, and the counsel for the plaintiff in error, in an ingenious and able argument, review so much of it that the points raised can not well be fully discussed without reproducing most of the charge. Much of the discussion results in verbal criticisms, and is upon abstract propositions that involve no new questions. No practical purpose can therefore be subserved by an extended consideration here of the numerous questions raised upon the elaborate charge in the case.
The judgment of the court of common pleas is affirmed.
Scott, C. J., and White, Welch, and Brinkerhoee, XJ\, concurred.